IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| KEVIN HARDAWAY, as next of kin of Doris Albright, deceased, and on behalf of the wrongful death beneficiaries of Doris Albright,<br><br>    Plaintiff,<br><br>v.<br><br>QUINCE NURSING AND REHABILITATION CENTER, LLC, d/b/a QUINCE NURSING AND REHABILITATION CENTER; AURORA CARES, LLC; DTD HC; D&N, LLC; DONALD T. DENZ; and NORBERT A. BENNETT,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:19-2464 |

**ORDER**

Before the Court is Defendant Quince Nursing and Rehabilitation Center, LLC's ("Quince") September 26, 2019 Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel"). (ECF No. 16.) Plaintiff Kevin Hardaway, as next of kin of Doris Albright, deceased, and on behalf of the wrongful death beneficiaries of Doris Albright ("Hardaway"), responded on October 9, 2019. (ECF No. 20.) Quince replied on October 25, 2019. (ECF No. 29.)

For the following reasons, Quince's Motion to Compel is DENIED.

**I.   Background**

This is a health care liability suit alleging a wrongful death. Doris Albright was a resident of Quince Nursing and Rehabilitation Center from about August 21, 2018, until her death on August 29, 2019. (Compl., ECF No. 1 ¶¶ 20, 42.) On admission to the nursing home, Doris Albright's sister, Charitee Albright, signed an arbitration agreement (the "Agreement"), which stated that the parties, Doris Albright and Quince, agreed to submit "[a]ny and all disputes" "arising out of or in any way relating to . . . the Resident's stay[] at the facility . . ." to arbitration. (ECF No. 16-2 at 1 ¶ 3; id. at 3.) The Agreement further stated that "[t]he term 'Resident' shall refer collectively to those signing with or for the Resident" and that "[a] person signing who routinely makes decisions for the Resident, if not the Power of Attorney or Guardian/Conservator, will be considered a health care surrogate/proxy and/or Legal Representative." (Id. ¶ 2.) The Agreement stated that the arbitrator should apply the law of the state where the facility is located, except that the Federal Arbitration Act should exclusively govern the enforcement of the Agreement. (Id. ¶ 3.) Doris Albright did not sign the Agreement. (See id. at 3.)

There is no evidence in the record that Charitee Albright had authorization to sign the Agreement on Doris Albright's behalf.

On July 19, 2019, Kevin Hardaway instituted the present action as son and next of kin of Doris Albright and on behalf of all wrongful death beneficiaries. (ECF No. 1.) Hardaway brings claims for statutory negligence under the Tennessee Health Care Liability Act, Tenn. Code Ann. §§ 29-26-101, et seq. ("THCLA"), negligence under Tennessee common law, and survival and wrongful death, all arising from Doris Albright's stay at Quince Nursing and Rehabilitation Center. (Id. ¶¶ 47-70.)

On September 26, 2019, Quince filed the Motion to Compel. (ECF No. 16.) Quince argues that the Agreement binds Doris Albright and that all claims brought by Hardaway are subject to arbitration. (ECF No. 16-1.) Quince asks the Court to compel arbitration and stay all proceedings pending resolution of arbitration.[1] (ECF No. 16.)

On November 4, 2019, the Court held a scheduling conference in which the Motion to Compel was discussed. (ECF No. 34.) The Court granted the parties' request to conduct discovery

---

[1] In addition to the nursing home as a facility defendant, Hardaway names other defendants, including corporate defendants and individuals (the "Non-facility Defendants"). The Non-facility Defendants have filed a concurrent motion to dismiss for lack of jurisdiction. (ECF No. 17.) They argue that, if the Court finds them subject to personal jurisdiction, the Agreement also binds Hardaway to arbitration of the claims against them. (ECF No. 16-1 at 1 n.1.)

3

addressing authorization to sign the Agreement. (See id.) A subsequent Scheduling Order established January 31, 2020, as the deadline for the parties to complete arbitration-related discovery; March 2, 2020, as the deadline to file any arbitration-related memoranda; and March 16, 2020, as the deadline for the parties to respond to any arbitration-related memoranda. (ECF No. 36.)

On March 2, 2020, both parties filed briefs addressing the applicability of a recent Tennessee Court of Appeals decision and reiterating arguments made in their October filings. The parties produced no new evidence. (See ECF Nos. 46, 47.) On March 16, 2020, Hardaway filed a response to Quince's March 2, 2020 memorandum. (ECF No. 48.)

**II. Jurisdiction and Choice of Law**

The Court has diversity jurisdiction. 28 U.S.C. § 1332. The amount in controversy exceeds $75,000. Hardaway is seeking compensatory and punitive damages for, inter alia, survival and wrongful death claims against multiple defendants. (ECF No. 1 ¶¶ 53, 64, 70, 73; id. at 22 ¶¶ 1, 4.)

The parties are completely diverse. At the time of her death, Doris Albright was a citizen of Tennessee. (ECF No. 50 ¶ 1.) Kevin Hardaway is also a citizen of Tennessee. (Id. ¶¶ 2, 4-5.) None of the defendants is a citizen of Tennessee.

4

Quince is a Tennessee limited liability company. (Id. ¶ 6.) Aurora Cares, LLC is a New York limited liability company. (Id. ¶ 8.) For purposes of diversity jurisdiction, limited liability companies have the citizenship of each of their members. Americold Realty Tr. v. Conagra Foods, Inc., 136 S. Ct. 1012, 1015 (2016) (citing Carden v. Arkoma Associates, 494 U.S. 185, 195-96 (1990)); accord Delay v. Rosenthal Collins Grp., LLC, 585 F.3d 1003, 1005 (6th Cir. 2009). The members of Quince and Aurora Cares, LLC are D&N, LLC and DTD HC, LLC, which are also named defendants. (ECF No. 50 ¶¶ 7, 9.) D&N, LLC and DTD HC, LLC are New York limited liability companies. (Id. ¶¶ 10, 13.) D&N, LLC's members are Norbert A. Bennett, the Norbert A. Bennett Children's Trust, and the Norbert A. Bennett Grand-Children's Trust. (Id. ¶ 11.) Bennett is a citizen of New York. (Id. ¶ 17.) The citizenship of a traditional trust is that of its trustee. See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 38-40 (3d Cir. 2018) (citations omitted). The trustee of the Norbert A. Bennett Children's Trust and the Norbert A. Bennett Grand-Children's Trust is Ronald Bennett, who is also a citizen of New York. (ECF No. 50 ¶ 12.) DTD HC, LLC's members are Donald T. Denz and the Donald T. Denz Irrevocable Trust. (Id. ¶ 14.) Denz is a citizen of New York. (Id. ¶ 17.) The trustee of the Donald T. Denz

Irrevocable Trust is Martin Clifford, who is also a citizen of New York. (Id. ¶ 15.)

The Court has diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

Federal courts sitting in diversity apply state law to issues of substantive law and federal law to procedural issues. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938); see also Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., arbitration agreements may be invalid on the grounds that "exist at law" for the revocation of contracts. See 9 U.S.C. § 2. "In other words, whether an arbitration clause is enforceable is governed by state law." Stutler v. T.K. Constructors, Inc., 448 F.3d 343, 345 (6th Cir. 2006). State law determines the applicability of contract defenses such as fraud, duress, or unconscionability. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686–87 (1996); see Floss v. Ryan's Fam. Steak House, Inc., 211 F.3d 306, 314–15 (6th Cir. 2000). When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assume in their respective

briefing that Tennessee substantive law governs Hardaway's claims. The Court applies Tennessee substantive law to Hardaway's claims.

### III. Standard of Review

"When a suit is brought in federal court on issues that by written agreement are subject to arbitration, the Federal Arbitration Act requires that the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration[,] shall stay the trial of the action." O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 355 (6th Cir. 2003) (alterations, quotation marks, and citations omitted).

The FAA strongly favors arbitration. Albert M. Higley Co. v. N/S Corp., 445 F.3d 861, 863 (6th Cir. 2006); see also EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002). One of a court's primary responsibilities under the FAA is to determine whether there is a valid agreement to arbitrate. See 9 U.S.C. § 3; Mazera v. Varsity Ford Mgmt. Servs., LLC, 565 F.3d 997, 1001 (6th Cir. 2009) ("The court 'must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement.'") (quoting Landis v. Pinnacle Eye Care, LLC, 537 F.3d 559, 561

(6th Cir. 2008). "Any doubts about whether an [arbitration] agreement is enforceable, including defenses to arbitrability, should be resolved in favor of arbitration." Johnson v. Long John Silver's Rests., Inc., 320 F. Supp. 2d 656, 663 (M.D. Tenn. 2004) (citation omitted). "[A]bsent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate." Haskins v. Prudential Ins. Co. of Am., 230 F.3d 231, 239 (6th Cir. 2000), overruled on other grounds by Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003) (en banc).

The showing necessary to compel arbitration absent trial is the same as the showing necessary for summary judgment in a civil suit. Great Earth Cos. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002) (citing Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 129–30 (2d Cir. 1997)). The moving party must "clearly and convincingly establish[] the nonexistence of any genuine issue of material fact, and the evidence . . . must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party must show the existence of "a binding agreement to arbitrate." In re First Thermal Sys., Inc., 182 B.R. 510, 513 (Bankr. E.D. Tenn. 1995).

8

If that showing is made, the burden shifts to the non-moving party to demonstrate that the validity of the agreement is "in issue." Great Earth Cos., 288 F.3d at 889. That requires evidence beyond mere allegations and denials. See id. (citation omitted) ("In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate.").

### IV. Analysis

Hardaway argues that the Agreement does not bind Doris Albright or subject his claims to arbitration because Charitee Albright did not have legal authority to enter into and execute the Agreement on Doris Albright's behalf. (See ECF No. 20 at 7-9.) Quince does not contest the lack of authority, but argues that Doris Albright is bound to arbitration under a third-party beneficiary theory. (ECF No. 29 at 2-5; ECF No. 47 at 2-4.) Quince's argument is not well taken.

Any authority to compel arbitration would be derived from the existence of a contract binding Doris Albright. Hardaway argues that Charitee Albright did not have the authority to bind Doris Albright. If Charitee Albright's signature does not bind Doris Albright, there is no contract that would bind Doris Albright to arbitration. See McKey v. Nat'l Healthcare Corp.,

9

2008 WL 3833714, at *2 (Tenn. Ct. App. Aug. 15, 2008) (to bind resident of nursing home to an arbitration agreement, the mother or sister who signed the agreement had to have authority to act as resident's agent or surrogate); cf. United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). There is no evidence in the record that Charitee Albright had authority to sign the Agreement on Doris Albright's behalf. No valid contract binds Doris Albright to arbitration. Quince argues that, under a third-party beneficiary theory, the parties should be required to arbitrate their dispute regardless of whether Charitee Albright had authorization to enter into the Agreement. (ECF No. 29 at 2-5; ECF No. 47 at 2-4.)

"Generally, contracts are presumed to be 'executed for the benefit of the parties thereto and not third persons.'" Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc., 59 S.W.3d 63, 68 (Tenn. 2001) (quoting Oman Constr. Co. v. Tenn. Cent. Ry. Co., 370 S.W.2d 563, 572 (Tenn. 1963)). There is an exception to that rule when "the contracting parties express an intent that the benefits of the contract flow to a third party." Id. These "third-party beneficiaries" "may enforce a contract

10

if they are intended beneficiaries of the contract." Id. (citations omitted). In Tennessee, "a third party is an intended third-party beneficiary of a contract, and thus entitled to enforce the terms of a contract, where (1) the parties to the contract have not otherwise agreed, (2) recognition of the third-party's right to performance is appropriate to effectuate the parties' intent, and (3) terms or circumstances indicate that performance of the promise is intended or will satisfy an obligation owed by the promisee to the third party." Benton v. Vanderbilt Univ., 137 S.W.3d 614, 618 (Tenn. 2004) (citing Owner-Operator, 59 S.W.3d at 70).

Quince relies primarily on Benton, arguing that, as Quince construes its holding, "[u]nder Tennessee law, a non-signatory to an arbitration agreement may be compelled to arbitrate if that non-signatory is a third-party beneficiary of that arbitration agreement." (ECF No. 29 at 2-5) (citing Benton, 137 S.W.3d at 618); (see also No. 47 at 2-3.) Quince cites language in the Agreement providing that it is intended to be a part of a broader "Admissions Agreement" and that "Resident [Doris Albright] will be considered a third party beneficiary of this Agreement and is intended to benefit directly from the execution of this Agreement in conjunction with the corresponding admission(s) and receipt of services." (ECF No. 29 at 4)

11

(citing No. 16-2 at 1 ¶ 2.) Quince argues that this language requires the Court to enforce the Agreement against Doris Albright.

Quince's reliance on Benton is misplaced. Contrary to Quince's broader characterization, Benton held that "an arbitration provision in a contract is binding against a third-party beneficiary <u>who brings an action seeking to enforce the terms of that contract</u>." 137 S.W.3d at 618 (emphasis added). Benton is distinguishable because Doris Albright, as the alleged third-party beneficiary, is not "bring[ing] an action seeking to enforce the terms of th[e] contract." Id. The claims brought by the plaintiff in Benton – abuse of process, breach of contract, and a violation of the Tennessee Consumer Protection Act – derived from the contract containing the arbitration provision. See id. at 616. Benton declined to allow a plaintiff to "have his cake and eat it too" by allowing him to enforce certain favorable provisions of a contract while avoiding provisions he viewed as unfavorable. See id. at 619–20 ("Thus, where a third-party beneficiary seeks to enforce rights under a contract, an interpretation of the contract as a whole requires that the third party not be permitted to interpret the contract in a piecemeal fashion by avoiding unfavorable terms.").

12

Here, Hardaway, on behalf of Doris Albright, is not bringing contract claims or "seeking to enforce the terms of the contract." He is bringing claims for statutory and common law negligence and for survival and wrongful death that do not arise under the terms of the Agreement. (See ECF No. 1 ¶¶ 47-70.) The Benton court specifically said that its analysis "is applicable only to actions brought by a third-party beneficiary seeking to enforce rights under that contract" and that "[a]n arbitration provision may not be applicable in cases where claims are raised under other legal theories and are not intertwined with rights being enforced under the terms of the contract." 137 S.W.3d at 620 (emphasis added) (citations omitted).

Quince's argument also fails because the existence of a valid contract is a threshold requirement for any third-party beneficiary argument. Post-Benton, Tennessee courts have rejected similar third-party beneficiary arguments on that ground. See, e.g., Jones v. Allenbrooke Nursing & Rehab. Ctr., LLC, 2019 WL 6842372, at *6 (Tenn. Ct. App. Dec. 16, 2019); Ricketts v. Christian Care Ctr. of Cheatham Cty., Inc., 2008 WL 3833660, at *4 (Tenn. Ct. App. Aug. 15, 2008). In Ricketts, the Tennessee Court of Appeals decided that a nursing home contract signed by a family member who did not have authority to act on

13

behalf of the resident did not create a contract and, therefore, that there could be no third-party beneficiary of a contract. 2008 WL 3833660, at *4. Ricketts reasoned:

> Third party beneficiary concepts should not be used to circumvent the threshold requirement that there be a valid arbitration agreement. [The family member] signed the admission agreement as [the resident's] 'representative.' She was not entering into a contract on her own behalf, but as her mother's representative. The issue in this case is whether [the family member] had authority to act as her mother's agent and to enter into a contract on her behalf. If she did not have authority, there is no valid contract. Without a valid contract, there can be no third party beneficiary.

Id. Other courts are in accord. See, e.g., Hattiesburg Health & Rehab Ctr., LLC v. Brown, 176 So. 3d 17, 22 (Miss. 2015) (holding that for a third-party beneficiary to exist, there must first be a valid contract executed by one who had authority); Licata v. GGNSC Malden Dexter LLC, 2 N.E.3d 840, 848 (Mass. 2014) (same).

Quince relies on two orders in this District in which the court granted motions to compel arbitration. (ECF No. 47 at 4 n.1) (citing Foley v. Allenbrooke Nursing and Rehab. Ctr., LLC, 2:18-cv-02741-JPM-cgc, ECF No. 52 (W.D. Tenn. May 2, 2019); Farwell v. Quince Nursing and Rehab. Ctr., LLC, 2:18-cv-02795-JPM-dkv, ECF No. 20 (W.D. Tenn. May 2, 2019)). In Foley and Farwell, the court found that the arbitration agreements were valid and did not reach the third-party beneficiary issue. See

14

2:18-cv-02741-JPM-cgc, ECF No. 52 at 2 ("The Court, therefore, may not decide the arbitrability issue which includes the extent of rights conferred to Donna Foley as the third-party beneficiary.") (citation omitted); 2:18-cv-02795-JPM-dkv, ECF No. 20 at 2 (same). Here, Charitee Albright lacked authority to sign the Agreement. A valid contract does not exist. Therefore, Foley and Farwell are not apposite.

Because there is no evidence that Charitee Albright had the authority to act on behalf of Doris Albright, Doris Albright was not bound by the Agreement. Doris Albright was not a third-party beneficiary of the Agreement who would be precluded from bringing this action. The Agreement does not bind Hardaway to arbitration. Quince's Motion to Compel is DENIED.

## V. Conclusion

Quince's Motion to Compel Arbitration and Stay Proceedings is DENIED.

So ordered this 20th day of April, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

15