IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KEVIN HARDAWAY, as next of kin of Doris Albright, deceased, and on behalf of the wrongful death beneficiaries of Doris Albright, <br><br> Plaintiff, <br><br> v. <br><br> QUINCE NURSING AND REHABILITATION CENTER, LLC, d/b/a QUINCE NURSING AND REHABILITATION CENTER; AURORA CARES, LLC; DTD HC, LLC; D&N, LLC; DONALD T. DENZ; and NORBERT A. BENNETT, <br><br> Defendants. | No. 2:19-cv-2464 |

**ORDER**

Before the Court is Defendants Aurora Cares, LLC ("Aurora Cares"); DTD HC, LLC ("DTD"); D&N, LLC ("D&N"); Donald T. Denz; and Norbert A. Bennett's (collectively, the "Non-facility Defendants") Motion to Dismiss (the "Motion"), filed on September 26, 2019. (ECF No. 17.) Plaintiff Kevin Hardaway, as next of kin of Doris Albright, deceased, and on behalf of the wrongful death beneficiaries of Doris Albright ("Hardaway"), responded on October 24, 2019. (ECF No. 28.) Non-facility Defendants replied on November 7, 2019. (ECF No. 41.)

For the following reasons, Non-facility Defendants' Motion is DENIED.

**I.   Background**

Quince Nursing and Rehabilitation Center, LLC ("Quince") is a nursing home facility and a Tennessee limited liability company. (ECF No. 50 ¶ 6.)   Aurora Cares is a New York limited liability company. (Id. ¶ 8.)   The members of Quince and Aurora Cares are D&N and DTD. (Id. at ¶¶ 7, 9.)   D&N and DTD are New York limited liability companies. (Id. ¶ 10, 13.)   Norbert A. Bennett is a member of D&N. (Id. at ¶ 11.)   Donald T. Denz is a member of DTD. (Id. at 14.)

Doris Albright was a resident of Quince Nursing and Rehabilitation Center in Memphis, Tennessee, from August 21, 2018, until her death on August 29, 2018. (ECF No. 1 ¶¶ 20, 42.)   On July 19, 2019, Hardaway instituted the present action. (ECF No. 1.)   Hardaway brings claims for statutory negligence under the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. §§ 29-26-101, et seq., negligence under Tennessee common law, and survival and wrongful death, all arising from Doris Albright's stay at Quince. (Id. ¶¶ 47-70.)

On September 26, 2019, Non-facility Defendants filed the Motion, arguing that: (1) the Court does not have personal jurisdiction over them; (2) Denz and Bennett are protected from

2

suit under the "fiduciary shield doctrine"; (3) Hardaway fails to state a claim against the Non-facility Defendants under the THCLA; (4) DTD, D&N, Denz and Bennett cannot be held liable for the actions of Aurora Cares or Quince under prior Tennessee law; (5) there can be no personal liability for an owner, officer, or member of a Tennessee limited liability company; and (6) there can be no personal liability for a member or agent of a New York limited liability company. (ECF No. 17-1 at 10-24.)

Concurrently with Non-facility Defendants' Motion, Quince filed a Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel"). (ECF No. 16.) Non-facility Defendants argue that, if the Court has personal jurisdiction over them, an arbitration agreement binds Hardaway to arbitration on his claims against them. (Id. at 1 n.1.) On April 20, 2020, the Court denied Quince's Motion to Compel. (ECF No. 52.) The Court concluded that an arbitration agreement did not bind Hardaway to arbitration.[1] (Id. at 15.)

## II. Jurisdiction and Choice of Law

The Court has diversity jurisdiction. 28 U.S.C. § 1332. The amount in controversy exceeds $75,000. Hardaway seeks compensatory and punitive damages for, inter alia, survival and

---

[1] Because Non-facility Defendants are subject to the Court's in personam jurisdiction, Non-facility Defendants' argument about arbitration similarly fails.

wrongful death claims against multiple defendants. (ECF No. 1 ¶¶ 53, 64, 70, 73; id. at 22 ¶¶ 1, 4.)

The parties are completely diverse. At the time of her death, Doris Albright was a citizen of Tennessee. (ECF No. 50 ¶ 1.) Kevin Hardaway is also a citizen of Tennessee. (Id. ¶¶ 2, 4-5.) No defendant is a citizen of Tennessee. Quince is a Tennessee limited liability company. (Id. ¶ 6.) Aurora Cares is a New York limited liability company. (Id. ¶ 8; ECF No. 28-6 at 1.) For purposes of diversity jurisdiction, limited liability companies have the citizenship of each of their members. Americold Realty Tr. v. Conagra Foods, Inc., 136 S. Ct. 1012, 1015 (2016) (citing Carden v. Arkoma Associates, 494 U.S. 185, 195-96 (1990)); accord Delay v. Rosenthal Collins Grp., LLC, 585 F.3d 1003, 1005 (6th Cir. 2009). The members of Quince and Aurora Cares are D&N and DTD, which are also named defendants. (ECF No. 50 ¶¶ 7, 9.) D&N and DTD are New York limited liability companies. (Id. ¶¶ 10, 13.) D&N's members are Norbert A. Bennett, the Norbert A. Bennett Children's Trust, and the Norbert A. Bennett Grand-Children's Trust. (Id. ¶ 11.) Bennett is a citizen of New York. (Id. ¶ 17.) The citizenship of a traditional trust is that of its trustee. See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 38-40 (3d Cir. 2018) (citations omitted); Tyson v. Lakeland Nursing & Rehab. Ctr., LLC, No. 3:15-cv-571, 2015 WL 13650756, at *5 (S.D.

4

Miss. Dec. 11, 2015).   The trustee of the Norbert A. Bennett Children's Trust and the Norbert A. Bennett Grand-Children's Trust is Ronald Bennett, who is also a citizen of New York. (ECF No. 50 ¶ 12.)  DTD's members are Donald T. Denz and the Donald T. Denz Irrevocable Trust.  (Id. ¶ 14.)  Denz is a citizen of New York. (Id. ¶ 17.)  The trustee of the Donald T. Denz Irrevocable Trust is Martin Clifford, who is also a citizen of New York. (Id. ¶ 15.)

The Court has diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

Federal courts sitting in diversity apply state law to issues of substantive law and federal law to procedural issues. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938)).  When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte.  See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998).  The parties assume in their respective briefing that Tennessee substantive law governs Hardaway's claims.  The Court applies Tennessee substantive law to Hardaway's claims.

5

### III. Legal Standards

### A. Personal Jurisdiction

When a defendant challenges personal jurisdiction under Rule 12(b)(2), "[t]he plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [defendants] and the forum state to support jurisdiction.'" Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)). A plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012). If the plaintiff meets his burden, then the motion to dismiss should be denied "notwithstanding any controverting presentation by the moving party." See Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). Because the Court is relies on written submissions to resolve this Motion, rather than an evidentiary hearing or jurisdictional discovery, Hardaway's burden to establish a prima facie showing of personal jurisdiction is

"relatively slight." Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (quoting Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988)); see also Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998) ("relatively light"). The Court construes the facts in the light most favorable to Hardaway. See Air Prods., 503 F.3d at 549 (citing Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991)).

When considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a federal court looks first to the long-arm statute of the state in which it sits to determine the state's limitations on personal jurisdiction. See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624, 627 (6th Cir. 1998); see also Fed. R. Civ. P. 4(k)(1)(A). The court then assesses whether the exercise of personal jurisdiction, if any, would be appropriate under the Due Process Clause of the Fourteenth Amendment. See Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002); CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). If the exercise of jurisdiction would be inappropriate under the Due Process Clause of the Fourteenth Amendment, that "foreclose[s] the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." Theunissen, 935 F.2d at 1459.

7

**B.   Failure to State a Claim**

Rule 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).  A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides in light of its judicial experience and common sense that the claim is not plausible, the case may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level . . . ." Twombly, 550 U.S. at 555.

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.

"When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint." Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009) (citation omitted). "If the district court does consider evidence outside the complaint, it effectively converts the motion to dismiss to a motion for summary judgment." Id. (quotation marks and citations omitted). This Circuit generally takes "a liberal view of what matters fall within the pleadings for purposes of" a motion to dismiss. Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001). That does not mean that a court must or may consider any and all materials the parties submit. Documents attached to a motion to dismiss may be considered part of the pleadings if they are "referred to in a complaint and central to the claim." Id. (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)); see also Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

9

## IV.  Analysis

Non-facility Defendants assert that they should be dismissed from this suit because: (1) the Court does not have personal jurisdiction over them; (2) Denz and Bennett are protected from suit under the "fiduciary shield doctrine"; (3) Hardaway fails to state a claim against the Non-facility Defendants under the THCLA; (4) DTD, D&N, Denz and Bennett cannot be held personally liable for the actions of Aurora Cares or Quince; (5) there can be no personal liability for an owner, officer, or member of a Tennessee limited liability company; and (6) there can be no personal liability for a member or agent of a New York limited liability company.  (ECF No. 17-1 at 10-24.)

### A. Personal Jurisdiction

A federal court sitting in diversity must apply the law of the forum state to determine whether the court may exercise jurisdiction over the person of a non-resident defendant.  Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980).  The jurisdictional limits of Tennessee law and federal due process are coterminous. See Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); First Cmty. Bank, N.A. v. First Tenn. Bank, N.A., 489 S.W.3d 369, 384 (Tenn. 2015).  The Court need only decide whether exercising personal jurisdiction over Non-facility Defendants is consistent

10

with federal due process requirements.  Bridgeport Music, Inc. v. Still N the Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003).

The Due Process Clause of the Fourteenth Amendment requires that a non-resident defendant have at least "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state."  Conn v. Zakharov, 667 F.3d 705, 712–13 (6th Cir. 2012).

General jurisdiction allows a plaintiff to sue a defendant "on any and all claims," regardless of the connection (or lack thereof) between the claim and the forum.  Maxitrate Tratamento Termico E Controles v. Super Sys., Inc., 617 F. App'x 406, 408 (6th Cir. 2015) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)).  Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum."  Kerry Steel, Inc. v. Paragon

11

Indus., Inc., 106 F.3d 147, 149 (6th Cir. 1997) (quoting Helicopteros Nacionales de Colombia S.A v. Hall, 466 U.S. 408, 414-15 & nn.8-10 (1984)).

Hardaway concedes that the Court does not have general jurisdiction over Non-facility Defendants. (See ECF No. 28 at 12-17.) To conform with the Due Process Clause of the Fourteenth Amendment, the Court must have specific jurisdiction over Non-facility Defendants. Conn, 667 F.3d at 712-13. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (internal quotation marks and citations omitted). This Circuit has established a three-part test for determining whether there is specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968); see also AlixPartners, LLP v. Brewington, 836 F.3d 543, 549-50 (6th Cir. 2016); Harmer v. Colom, 650 F. App'x 267, 272 (6th Cir. 2016). The Court must have personal jurisdiction over each defendant as to each asserted claim. Rush v. Savchuk, 444 U.S. 320, 332 (1980); Hosp. Auth. of Metro. Gov't of Nashville v.

12

Momenta Pharm., Inc., 353 F. Supp. 3d 678, 690 (M.D. Tenn. 2018) (citing Bd. of Forensic Document Exam'rs, Inc. v. ABA, 2017 WL 549031, at *3 (W.D. Tenn. Feb. 9, 2017)).

The relationship between each defendant is an illustrative starting point. See Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC, 2018 WL 3740565, at *30 (Tenn. Ct. App. Aug. 6, 2018) (detailing the relationship between the same defendants in another suit involving a different nursing home). D&N and DTD are limited liability companies with their principal place of business in New York. (ECF No. 50 ¶¶ 10, 13.) Each entity maintains a fifty-percent membership interest in Quince. (ECF No. 1 ¶¶ 6, 7; No. 28-7 at 8; No. 28-8 at 15.) D&N and DTD likewise have fifty-percent membership interests in Aurora Cares, a New York limited liability company. (ECF No. 1 ¶ 5; No. 28-4 at 2.) Aurora Cares provides administrative support services to nursing homes across the country, including Quince. (ECF No. 17-3 ¶ 10; No. 17-4 ¶ 10.) Neither D&N nor DTD has employees or agents in Tennessee. (ECF No. 17-3 ¶ 34; No. 17-4 ¶ 34.) The sole manager and majority member of D&N is Bennett. (ECF No. 1 ¶ 9; No. 17-4 ¶ 27.) Bennett is also a manager of Quince and serves as the co-Chief Executive Officer of Aurora Cares. (ECF No. 1 ¶ 9; No. 17-4 ¶ 9.) The sole manager and majority member of DTD is Denz. (ECF No. 1 ¶ 8; No. 17-3 ¶ 27.) Denz is also a manager of Quince and serves as the

co-Chief Executive Officer and Chief Financial Officer of Aurora Cares.  (ECF No. 1 ¶ 8; No. 17-3 ¶ 9.)

**1. Aurora Cares, LLC**

To establish that the Court has personal jurisdiction over Aurora Cares, Hardaway must first show that Aurora Cares "purposefully avail[ed]" itself of "the privilege of acting in the forum state or causing a consequence in the forum state." Mohasco, 401 F.2d at 381.  One purposefully avails oneself when one "create[s] 'continuing obligations' between [one]self and residents of the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (citing Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n, 339 U.S. 643, 648 (1950)).  Although a physical presence is not required to assert jurisdiction, it "will enhance a potential defendant's affiliation with a [s]tate and reinforce the reasonable foreseeability of suit there." Id.

Hardaway has pled that Aurora Cares is the management company of Quince and that Aurora Cares conducts business related to the "operation, management, and/or control of Quince." (ECF No. 1 ¶ 5.)  Non-facility Defendants submit declarations from Denz and Bennett that "Aurora Cares provides administrative support services to nursing homes around the country, including Quince . . . pursuant to an administrative services agreement

14

between Quince and Aurora Cares."[2]  (ECF No. 17-3 ¶ 10; No. 17-4

¶ 10.)  Two of those nursing homes are in Tennessee.  (Id.)  Denz,

as co-CEO and CFO of Aurora Cares, states that he "ha[s]

occasionally traveled to Tennessee in my capacity as the Co-Chief

Executive Officer and Chief Financial Officer of Aurora Cares to

ensure that all duties under the administrative services agreement

between Quince and Aurora Cares are carried out."  (ECF No. 17-3

¶ 13.)  Bennett, as co-CEO of Aurora Cares, states similarly.  (ECF

No. 17-4 ¶ 13.)

Aurora Cares has purposefully availed itself of the privilege

of acting in Tennessee.  Its "substantial connection" with

Tennessee is its "avail[ment] [] of the privilege of conducting

business" by creating "continuing [contractual] obligations" with

Quince and another nursing home in Tennessee.  Burger King, 471

U.S. at 475-76; see Air Prods., 503 F.3d at 551 (holding that

defendants purposefully availed themselves of a forum when they

entered into "a continuing business relationship that lasted a

period of many years"); see also Tenn. Code Ann. § 20-2-223(a)(2)

(providing for jurisdiction over a person[3] who contracts to supply

---

[2] The Court may rely on these declarations and the facts in them because
they bear on the jurisdictional inquiry.  See Kuan Chen v. United States
Sports Acad., Inc., 956 F.3d 45, 55-56 (1st Cir. 2020).

[3] "Person" is defined by the statute as "an individual, executor,
administrator or other personal representative, or a corporation,
partnership, association or any other legal or commercial entity, whether

services in Tennessee).   The travel of Aurora Cares' officers to
Tennessee to ensure that its contractual obligations were being
carried out were not "random," "fortuitous," or "attenuated"
contacts with Tennessee.   Burger King, 471 U.S. at 476.   These
contacts increased the foreseeability of suit against Aurora Cares
in Tennessee.   Id.   The first Mohasco requirement is satisfied.
401 F.2d at 381.

Second, Hardaway must show that his causes of action arose
from Aurora Cares' activities in Tennessee.   Id.   This prong may
be satisfied if the "causes of action were 'made possible by' or
'lie in the wake of' the defendant's contacts, or whether the
causes of action are 'related to' or 'connected with' the
defendant's contacts with the forum state."   Air Prods., 503 F.3d
at 553 (citations omitted).   "[T]his standard [i]s a 'lenient
standard' and . . . the cause of action need not 'formally' arise
from defendant's contacts."   Id. (quoting Bird, 289 F.3d at 875).

Hardaway has submitted evidence that Aurora Cares "provides
support services including purchasing, financial statement and
cost report preparation, payroll, accounts receivable and payable
functions for [Quince]."   (ECF No. 28-4 at 2.)   Denz and Bennett
state that "Aurora Cares does not hire or fire the administrator

---

or not a citizen or domiciliary of this state and whether or not organized
under the laws of this state."   Tenn. Code Ann. § 20-2-221.

16

or other managing employees of Quince, does not control or have control over staffing levels at Quince, does not control the budget and expenditures of Quince, and does not implement and enforce the policies and procedures of Quince." (ECF No. 17-3 ¶ 11; No. 17-4 ¶ 11.)

Hardaway's negligence, survival and wrongful death claims rely on the theory that Doris Albright's injuries were due to Quince's lack of staff, staff training, staff monitoring, lack of resources, failure to adopt and follow proper rules, regulations, policies, plans, and guidelines, and overall, the failure to provide a safe environment. (See ECF No. 1 ¶ 51(a)-(w).) Hardaway has submitted evidence that these failings could, in part, be due to the services that Aurora Cares provided to Quince. (See ECF No. 28-4 at 2.) For example, Hardaway has submitted evidence that Aurora Cares handles, among other things, "purchasing" for Quince. (See id.) Hardaway alleges that Defendants "fail[ed] . . . to provide the facility with adequate resources to ensure sufficient non-medical (CNA) staffing and supplies, such as diapers, linens, and towels, to care for all residents, including Doris Albright." (ECF No. 1 ¶ 51(b).) Taking the allegations in the Complaint and Hardaway's characterization of the services that Aurora Cares provided as true, as the Court must at this stage, see Air Prods., 503 F.3d at 549 (citing Theunissen, 935 F.2d at 1459), Hardaway

17

has sufficiently pled that his claims arose from Aurora Cares'
activities in Tennessee. AlixPartners, 836 F.3d at 549-50; cf.
Hatfield, 2018 WL 3740565, at *33 (upholding a jury verdict finding
Aurora Cares directly liable for plaintiff's injuries at a
Tennessee nursing home because the evidence supported the finding
that Aurora Cares was an "integral figure in the care provided to"
the nursing home). The second Mohasco requirement is satisfied.
401 F.2d at 381.

Third, Hardaway must show that "the acts of the defendant or
consequences caused by the defendant [] ha[d] a substantial enough
connection with the forum state to make the exercise of
jurisdiction over the defendant reasonable." Id. "In determining
whether the exercise of jurisdiction is reasonable, the court
should consider, among others, the following factors: (1) the
burden on the defendant; (2) the interest of the forum state;
(3) the plaintiff's interest in obtaining relief; and (4) other
states' interest in securing the most efficient resolution of the
policy." Air Prods., 503 F.3d at 554-55 (citing Intera Corp., 428
F.3d at 618). "When the first two elements [of Mohasco] are met,
an inference arises that the third, fairness, is also present;
only the unusual case will not meet this third criterion." First
Nat'l Bank v. J.W. Brewer Tire Co., 680 F.2d 1123, 1126 (6th Cir.
1982).

Hardaway has satisfied the first two elements of Mohasco.
Aurora Cares presents no considerations that would render the
exercise of personal jurisdiction over it in Tennessee
unreasonable. "Tennessee has interests in resolving this case,
not the least of which is to provide a forum for the adjudication
of a dispute between a resident and a nonresident that has
purposefully availed itself of acting in and causing consequences
in Tennessee." Third Nat'l. Bank in Nashville v. WEDGE Grp. Inc.,
882 F.2d 1087, 1092 (6th Cir. 1989). The third Mohasco requirement
is satisfied. 401 F.2d at 381.

Hardaway has satisfied his "relatively slight" burden. Air
Prods., 503 F.3d at 549. The Court has specific personal
jurisdiction over Aurora Cares. Aurora Cares purposefully availed
itself of conducting business in Tennessee, Hardaway's claims
plausibly arose from Aurora Cares' actions in Tennessee, and the
exercise of jurisdiction over Aurora Cares is reasonable. Mohasco,
401 F.2d at 381. Non-facility Defendants' Motion to Dismiss Aurora
Cares on jurisdictional grounds is DENIED.

**2. DTD HC, LLC and D&N, LLC**

Hardaway must next show that the Court has personal
jurisdiction over DTD and D&N. DTD and D&N have fifty-percent
ownership interests in Quince and Aurora Cares. (ECF No. No. 28-
4 at 2; No. 28-7 at 8; No. 28-8 at 15.) Hardaway argues that this

Court has specific jurisdiction over DTD and D&N because they "receive substantial revenue from Quince." (ECF No. 28 at 15) (citing Tenn. Code Ann. § 20-2-223(4) for the proposition that jurisdiction is proper over any person who derives substantial revenue from services rendered in Tennessee.)[4] Hardaway further argues that the revenue that DTD and D&N received "depleted the resources available to provide staffing, supplies and care to residents [at Quince], including Ms. Albright, which resulted in her injuries and death." (Id.)

DTD and D&N, as separate entities, do not have sufficient minimum contacts with Tennessee for this Court to exercise personal jurisdiction over them under the Mohasco test. 401 F.2d at 381. Deriving substantial revenue from a subsidiary that is subject to the jurisdiction of the court in the forum state, alone, is not enough for a court to have jurisdiction over that subsidiary's parent company. See Cox v. Koninklijke Philips, N.V., 647 F. App'x 625, 629 (6th Cir. 2016) (citing Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292, 296 (6th Cir. 1964) ("[M]ere

---

[4] Although satisfaction of § 20-2-223(4) might appear sufficient on its face for the exercise of personal jurisdiction in Tennessee courts, the jurisdictional limits of Tennessee law and federal due process are coterminous. Both Tennessee and federal courts are constrained by the Due Process Clause of the Fourteenth Amendment and jurisdiction must be proper under the confines of that Clause. See Theunissen, 935 F.2d at 1459 (stating that a defect in federal Due Process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it").

ownership by a corporation of all of the stock of a subsidiary amenable to the jurisdiction of the courts of a state may not alone be sufficient to justify holding the parent corporation likewise amenable.")).

The Court does, however, have personal jurisdiction over DTD and D&N.  It is compatible with the federal Due Process Clause for a court to exercise personal jurisdiction over entities that would not ordinarily be subject to personal jurisdiction in that court when the entities are substantively legally related to an entity that is subject to personal jurisdiction in that court.  See 4A Wright & Miller, Federal Practice & Procedure, § 1069.4 (4th ed. 2019) (collecting cases in which federal courts have exercised personal jurisdiction over defendants through subsidiaries, partnerships, alter egos, related and unrelated companies, successors-in-interest, companies acting as agents, and a number of other instances); see generally Lea Brilmayer & Katheen Paisley, Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency, 74 Calif. L. Rev. 1 (1986).

The relevant theory here, which this Circuit and Tennessee have adopted, is the "alter-ego theory of personal jurisdiction," which "'provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as

separate entities but are one and the same for purposes of jurisdiction.'" Carrier Corp., 673 F.3d at 450-51 (citing Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008) (collecting cases)); accord Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 652 (Tenn. 2009). If a subsidiary's parent company's "separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." Wright & Miller, § 1069.4.

When analyzing whether the alter-ego theory of personal jurisdiction is satisfied in diversity actions, the Court looks to the forum state's substantive law. See Thomson, 545 F.3d at 362 (applying Ohio law in analyzing personal jurisdiction under alter-ego theory in diversity action); Hilani v. Greek Orthodox Archdiocese of Am., 863 F. Supp. 2d 711, 720-21 (W.D. Tenn. 2012) (same, applying Tennessee law); Gordon, 300 S.W.3d at 652 ("[The] determin[ation] [of] whether one corporation is an alter-ego of another for jurisdictional purposes is controlled by state law.") (citing Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1343 (D.N.M. 1994)).

The alter-ego theory applies to limited liability companies as well as corporations. Quince, Aurora Cares, DTD, and D&N are limited liability companies. In Tennessee, a limited liability company is "a hybrid of partnerships and corporations." State v. Thompson, 197 S.W.3d 685, 692 n.6 (Tenn. 2006) (citing Tenn. Code Ann. §§ 48-201-101, et seq.). The case law governing corporations is equally applicable to the analysis here. See Hatfield, 2018 WL 3740565, at *36-*44; cf. Edmunds v. Delta Partners, L.L.C., 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012) ("The doctrine of piercing the corporate veil applies equally to cases in which a party seeks to pierce the veil of a limited liability company . . . .").

Under Tennessee law, a Court has personal jurisdiction over an entity defendant under the alter-ego theory if a plaintiff demonstrates: "(1) that the subsidiary corporation is a sham or dummy[;] (2) that the two corporations are, in fact, identical and indistinguishable[;] or (3) that the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent corporation[.]" Gordon, 300 S.W.3d at 653 (citations omitted). The key inquiry is whether "the parent corporation 'exercises complete dominion over its subsidiary . . . so that the corporate entity . . . had no separate mind, will or existence of its own.'" Id. (citing Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo, 578 S.W.2d 625, 632 (Tenn. 1979)); see also Restatement

23

(Second) of Conflict of Laws § 52 (1971) ("Judicial jurisdiction over a subsidiary corporation will likewise give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence.").

Non-facility Defendants concede that the Court has personal jurisdiction over Quince.  (ECF No. 17-1 at 14.)  The Court has personal jurisdiction over Aurora Cares.  Because Non-facility Defendants concede that personal jurisdiction over Quince is proper, and because the Court has personal jurisdiction over Aurora Cares, personal jurisdiction over DTD and D&N comports with the Due Process Clause of the Fourteenth Amendment so long as Hardaway has adequately pled the alter-ego theory as to Quince or Aurora Cares.  See In re Commodity Exch., Inc., 213 F. Supp. 3d 631, 680 (S.D.N.Y. 2016).

Neither D&N nor DTD has employees or agents in Tennessee. (ECF No. 17-3 ¶ 34; No. 17-4 ¶ 34.)  Denz and Bennett are respective members and managers of each LLC.  (See ECF No. 1 ¶¶ 8, 9; No. 17-3 ¶ 27; No. 17-4 ¶ 27.)  Hardaway argues that "Denz and Bennett are managers of" DTD and D&N and that Denz and Bennett "retain exclusive control over each [entity]."  (ECF No. 28 at 8; see also No. 1 ¶¶ 8, 9.)  Hardaway argues that Denz and Bennett, as managers of DTD and D&N, "drafted the operating agreements for [Quince]

24

and, . . . made themselves sole managers with 'complete, full and exclusive discretion, power and authority in the management and control' of [Quince]." (ECF No. 28 at 15-16) (quoting No. 28-3 at 7-9.) Hardaway argues that both Denz and Bennett were governing body members of Quince with exclusive regulatory duties to manage and operate Quince and that those duties included the responsibility to appoint the nursing home's administrator, to implement policies governing the management and operation of the nursing home, and to implement quality assurance and performance improvement programs. (Id. at 16.) He further argues that both men executed Quince's property lease. (Id. at 17) (citing No. 28-6 at 8-16.) Hardaway points out that DTD and D&N own Aurora Cares, Denz and Bennett are officers of Aurora Cares, and Denz and Bennett travel to Tennessee to check on Aurora Cares' contractual obligations. Hardaway attaches sufficient evidence to support his arguments. He concludes that DTD and D&N, through Denz and Bennett, own, operate, control, manage, and profit from Quince and Aurora Cares in such a way that each entity is "practically indistinguishable from one another." (ECF No. 28 at 6.)

Denz and Bennett submit affidavits in which they specifically deny Hardaway's assertions. (See generally ECF Nos. 17-3, 17-4.) Selena Knox-Binion, the Executive Director at Quince in 2019, also

25

submits a declaration in which she denies some of Hardaway's assertions. (See generally ECF No. 17-2.)

Courts have exercised jurisdiction over parent companies in circumstances similar to those here. See, e.g., Third Nat'l Bank, 882 F.2d at 1090-92 (holding that the district court had personal jurisdiction over a parent company that, among other things, was a 100% owner of the subsidiary and had officers serving on the subsidiary's board, the subsidiary's board met regularly in Tennessee to review and direct the subsidiary's operations, and the parent was involved in multiple contracts involving the subsidiary); Carrier Corp., 673 F.3d at 450-51 (similar); Jones v. Arcadia Nursing & Rehab. Ctr., L.L.C., No. 15-cv-2910, 2017 WL 1193735, at *3-4 (W.D. La. Mar. 29, 2017), reconsideration denied, 2017 WL 6816738 (W.D. La. May 24, 2017) (asserting personal jurisdiction over DTD and D&N circumstances similar to those here).

There is sufficient evidence in the record for Hardaway to meet his "relatively slight" burden to establish an alter-ego theory of personal jurisdiction over DTD and D&N. Air Prods. & Controls, 503 F.3d at 549; Gordon, 300 S.W.3d at 652. That finding is appropriate even given the contradicting evidence Non-facility Defendants submit. (ECF Nos. 17-2, 17-3, 17-4); see Serras, 875 F.2d at 1214 (if a plaintiff meets his burden to establish jurisdiction, "the motion to dismiss should be denied,

26

notwithstanding any controverting presentation by the moving party") (internal citation and quotation marks omitted); Theunissen, 935 F.2d at 1464 (similar); Jones, 2017 WL 1193735, at *4 (asserting personal jurisdiction and rejecting similar, "artfully crafted" affidavits submitted by Denz and Bennett). The Court has personal jurisdiction over DTD and D&N under an alter-ego theory of personal jurisdiction.[5] Non-facility Defendants' Motion to Dismiss DTD and D&N on jurisdictional grounds is DENIED.

Both parties rely on the Tennessee Court of Appeals' decision in Hatfield. See 2018 WL 3740565. The same Non-facility Defendants were defendants in Hatfield. See id. at *1. After the trial court had denied Non-facility Defendants' motions to dismiss, the case went to trial and a jury awarded the plaintiff substantial damages. Id. at *1-3. On appeal, Non-facility Defendants asked the appellate court to determine, inter alia, two issues relevant to those here: (1) whether the trial court erred in failing to dismiss Denz, Bennett, DTD, and D&N for lack of personal jurisdiction; and (2) whether the trial court erred in considering Denz, Bennett, DTD, D&N, and Aurora Cares as alter-

---

[5] Because Hardaway has adequately alleged personal jurisdiction under an alter-ego theory, the Court need not reach Hardaway's argument that personal jurisdiction is proper under a conspiracy jurisdiction theory. In re Commodity Exch., Inc., 213 F. Supp. 3d at 680 n.41.

egos by allowing the jury to pierce the corporate veil and disregard the separate individuals and entities. Id. at *4-5.

Addressing personal jurisdiction, the trial court in Hatfield found that Denz, Bennett, DTD, and D&N had sufficient minimum contacts with Tennessee to assert personal jurisdiction over them, or, alternatively, that Denz, Bennett, DTD, and D&N had waived their lack-of-personal-jurisdiction defense "when [they] sought affirmative relief from the Court in the form of [several listed motions and orders]." See id. at *6 (citing the trial court's order). The Court of Appeals affirmed the trial court's finding of waiver and did not reach the trial court's substantive findings. Id. at *6-8. Non-facility Defendants have not waived their lack-of-personal-jurisdiction defense in this case. Although illustrative, Hatfield offers no assistance on the substantive law of personal jurisdiction.

Addressing alter-ego and corporate veil-piercing issues, the Court of Appeals considered the sufficiency of the jury's findings on liability, how the jury was charged on veil-piercing, and the legal test for findings of fact. See id. at *36-42. Standards of review and analyses of personal jurisdiction differ from issues of liability and findings about the sufficiency of a jury's verdict. Although illustrative, Hatfield does not assist the Court in

28

deciding the alter-ego and corporate veil-piercing personal jurisdiction arguments presented here.

### 3. Donald T. Denz, Norbert Bennett, and the Fiduciary-Shield Doctrine

The Court has personal jurisdiction over Denz and Bennett under the Mohasco test. 401 F.2d at 381. Denz and Bennett state that they both traveled to Tennessee to "ensure that all duties under the administrative services agreement between Quince and Aurora Cares are carried out." (ECF No. 17-3 ¶ 13; No. 17-4 ¶ 13.) Hardaway has pled that the services Aurora Cares provided, and decisions Denz and Bennett made about those services, led to the injuries Doris Albright sustained. (See ECF No. 1 ¶ 51(a)-(w).) Hardaway has pled that other administrative decisions Denz and Bennett made about the management of Quince led to the injuries Doris Albright sustained. (Id. ¶¶ 54-63.) Hardaway has offered sufficient evidence to support his assertions. See Mohasco, 401 F.2d at 381.

Non-facility Defendants argue that the Court cannot exercise jurisdiction over Denz and Bennett in their individual capacities because they are protected by the fiduciary-shield doctrine. (ECF No. 17-1 at 14-15.) The Tennessee Court of Appeals[6] has recognized

---

[6] "Though the Tennessee Supreme Court has not squarely addressed the [fiduciary-shield doctrine], when 'an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that

the fiduciary-shield doctrine, which precludes jurisdiction over individuals who act exclusively as corporate officers on behalf of a bona fide corporation.  See, e.g., Boles v. Nat'l Dev. Co., 175 S.W.3d 226, 251 (Tenn. Ct. App. 2005) (citing Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985)); accord Balance Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 697 (6th Cir. 2000).  Non-facility Defendants contend that Denz and Bennett's contacts with Tennessee were solely in their corporate rather than their individual capacities and that they are protected by the fiduciary-shield doctrine.  (ECF No. 17-1 at 15; No. 17-3 ¶ 13; No. 17-4 ¶ 13.)

The fiduciary-shield doctrine does not provide blanket protection to corporate officers.  "In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations."  Intera Corp., 428 F.3d at 615 (citations omitted).  Because Tennessee's long-arm statute is coterminous with federal due process, Parker, 938 F.3d at 839; First Cmty. Bank, 489 S.W.3d at 384, federal due process limitations govern the fiduciary-shield analysis, see Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc., 761 F. Supp. 2d 726, 730-33 (M.D. Tenn. 2011).  Courts have questioned whether the Due

---

the highest court of the state would decide otherwise.'"  Church Joint Venture, L.P. v. Blasingame, 947 F.3d 925, 932 (6th Cir. 2020) (quoting West v. AT&T, 311 U.S. 223, 237 (1940)).

Process Clause of the Fourteenth Amendment -- a "constitutional limitation[]" -- implicates the fiduciary-shield doctrine.  See id. (collecting cases); see also Johnson v. Gray, 2011 WL 13228171, at *6 (E.D. Tenn. Sept. 16, 2011) (rejecting the application of the fiduciary-shield doctrine as applied to a Tennessee breach-of-contract claim); MCA Records, Inc. v. Highland Music, Inc., 844 F. Supp. 1201, 1203 (M.D. Tenn. 1993) ("Where the forum state's long-arm statute is coextensive with the full reach of due process, the fiduciary[-]shield doctrine is inapplicable."); 3A William M. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 1296.20 (2019) ("The fiduciary[-]shield doctrine is not available where the forum state's long-arm statute is coextensive with the full reach of due process.") (collecting cases).

This Circuit has, as a practical matter, read the fiduciary-shield doctrine out of existence for purposes of personal jurisdiction:

> While it is true that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation, we hold that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice;

i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

Balance Dynamics, 204 F.3d at 698 (citations and quotation marks omitted); see also Wright & Miller, § 1069.4 ("[P]ersonal jurisdiction over individual officers and employees of a corporation may not be predicated on the federal court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within the forum that would subject them to jurisdiction.") (collecting cases) (emphasis added).  The Supreme Court's prior holdings comport with this understanding. See Calder v. Jones, 465 U.S. 783, 790 (1984) ("[Defendants'] status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually."); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) (citing Calder for "reject[ing] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity").  This reading is in line with the practical application of the doctrine in Tennessee state courts.  See Simplex, 761 F. Supp. 2d at 731 ("No Tennessee state court has ever applied the doctrine to bar jurisdiction.").

Denz and Bennett's assertation that they were acting solely in their official capacity is not determinative for purposes of jurisdiction.  The question is whether they were "actively and

32

personally involved in the conduct giving rise to the claim[s]," regardless of the capacity in which they acted. Balance Dynamics, 204 F.3d at 698.   Because Denz and Bennett were "actively and personally involved in the conduct giving rise to [Hardaway's] claim[s]," and because asserting jurisdiction over them would comport with the "traditional notions of fair play and substantial justice," they are not protected by the fiduciary-shield doctrine. Balance Dynamics, 204 F.3d at 698; see Nat'l Can Corp. v. K Beverage Co., 674 F.2d 1134, 1137 (6th Cir. 1982) (finding jurisdiction over defendant in his individual capacity when he was the president of corporation, traveled to the forum state once a month to oversee the company's business, and executed a contractual agreement in the forum state); see also Flynn v. Greg Anthony Constr. Co., 95 F. App'x 726, 740-41 (6th Cir. 2003) (holding that a vice-president and president of two corporations were subject to jurisdiction in their individual capacities because of "their involvement in orchestrating the affairs" of the companies' business in the forum state); Commodigy OG Vegas Holdings LLC v. ADM Labs, 417 F. Supp. 3d 912, 924 (N.D. Ohio 2019) ("When an individual defendant engages in solicitation and negotiations that give rise to a 'continuing obligation,' that defendant is not protected by the fiduciary shield doctrine and is subject to personal jurisdiction in the forum state.") (emphasis in original)

33

(citing Walker v. Concoby, 79 F. Supp. 2d 827, 833 (N.D. Ohio 1999) (fiduciary-shield doctrine did not preclude exercise of personal jurisdiction, under Ohio long-arm statute, over non-resident defendants who personally involved themselves in the transaction giving rise to the cause of action and were physically present in state, even if they were acting on behalf of corporation)); Superior Consulting Co., Inc. v. Walling, 851 F. Supp. 839 (E.D. Mich. 1994), appeal dismissed and remanded on other grounds, 48 F.3d 1219 (6th Cir. 1995) (fiduciary-shield doctrine did not insulate former Texas employee from assertion of personal jurisdiction in Michigan employer's action to enforce covenant not to compete when employee had significant contacts with Michigan in personal capacity).   Non-facility Defendants' Motion to Dismiss Denz and Bennett on jurisdictional grounds is DENIED.

## B. Failure to State a Claim Under the THCLA

Non-facility Defendants argue that Hardaway's THCLA claims should be dismissed.  (ECF No. 17-1 at 15-17; No. 41 at 11-12.) They argue that the THCLA only allows health care liability actions against "licensees, the licensee's management company, the licensee's managing employees, or an individual caregiver who provided direct health care services, whether an employee or independent contractor."  (ECF No. 17-1 at 15-16) (citing Tenn. Code. Ann § 29-26-102(a)).   Non-facility Defendants argue that

34

they do not meet any of those definitions, that they are "passive investors" and that "passive investors" are not liable under the THCLA.  (See id. at 16-17.)  Hardaway argues that he has properly pled that Non-facility Defendants meet the definitions under the THCLA or, alternatively, that he has sufficiently pled ordinary negligence claims against them.  (ECF No. 28 at 22-25.)  Hardaway's first argument is sufficient.

Non-facility Defendants submit three declarations with their Motion and rely on them to support their arguments.  (ECF Nos. 17-2, 17-3, 17-4.)  Although dismissal for lack of personal jurisdiction is governed by Rule 12(b)(2), dismissal based on lack of sufficient pleading is governed by Rule 12(b)(6).  Under Rule 12(b)(6), the Court normally "may not consider matters beyond the complaint."  Hensley Mfg., 579 F.3d at 613.  The Court may consider such matters if they are "referred to in [the] complaint and central to the [plaintiff's] claim."  Armengau, 7 F. App'x at 344. The declarations Non-facility Defendants attach to their brief were not referred to in the Complaint and are not central to Hardaway's claims.  The Court will not consider them in evaluating Non-facility Defendants' arguments about the sufficiency of the Complaint.  See Morris Aviation, LLC v. Diamond Aircraft Indus., Inc., 730 F. Supp. 2d 683, 695 (W.D. Ky. 2010).

The THCLA limits who can bring an action under it:

(a) Except as provided in this section, a health care liability action against a licensee may be brought only against the licensee, the licensee's management company, the licensee's managing employees, or an individual caregiver who provided direct health care services, whether an employee or independent contractor. A passive investor shall not be liable under this part. A health care liability action against any other individual or entity may be brought only pursuant to subsection (b).[7]

Tenn. Code Ann. § 29-26-102(a). A "licensee" is defined by the statute as "a health care provider licensed, authorized, certified, registered, or regulated under title 33, 63, or 68 that is legally responsible for all health care services provided."

Id. § 29-26-101(a)(3). "Management company" is defined as:

[A]n individual or entity that contracts with, or receives a fee from, a licensee to provide any of the following services to or for a licensee:

(A) Directly hiring or firing the administrator or other managing employees of the licensee;

(B) Directly controlling or having control over the staffing levels at the licensee;

(C) Directly controlling the budget and expenditures of the licensee; or

(D) Directly implementing and enforcing the policies and procedures of the licensee.

Id. § 29-26-101(a)(4)(A)-(D). A "passive investor" is "an individual or entity that has an ownership interest in a licensee but does not directly participate in the day-to-day decision making

---

[7] Subsection (b) is not relevant here.

or operations of the licensee." <u>Id.</u> § 29-26-101(a)(5). A "[l]icensee's managing employee[]" is not defined. Non-facility Defendants argue that Hardaway has not pled sufficient facts to sustain his causes of actions under the THCLA.[8] (ECF No. 17-1 at 15-17; No. 41 at 11-12.)

Hardaway has pled that Aurora Cares is Quince's "management company" and that Hardaway's "cause of action" arises from "business conducted by Aurora Cares, LLC in the operation, management, and/or control of Quince . . . ." (ECF No. 1 ¶ 5.) He has pled that DTD, through Denz, "is responsible for maintaining the nursing home's finance department, which includes accounts payable, payroll, accounts receivable, general ledger, and financial statement preparation for Quince . . . ." (<u>Id.</u> ¶ 6.) He has pled that D&N, through Bennett, "engaged in contact with facilities, made on-site visits, and is responsible for providing continuous oversight regarding the direct care, contract negotiations, purchasing, capital improvements, employee and resident safety, and human resources for Quince . . . ." (<u>Id.</u> ¶ 7.) He has pled that Denz "actively manages Quince . . . and is the manager of Quince []"; "retain[s] exclusive control over the

_____

[8] The parties do not dispute that Quince is a "health care provider" or "licensee" as defined by the THCLA. (<u>See</u> ECF No. 1 ¶¶ 4, 50; No. 17-1 at 2); Tenn. Code Ann. § 29-26-101(a)(1); <u>id.</u> § 29-26-101(a)(2)(E); <u>id.</u> § 29-26-101(a)(3).

operations of Quince []"; and "is responsible for maintaining the finance department, which includes accounts payable, payroll, accounts receivable, general ledger, and financial statement preparation for Quince [], and controlled the financial operations of Aurora Cares, LLC, Quince [], and DTD HC, LLC." (Id. ¶ 8.) He has pled that Bennett "actively manages Quince . . . and is the manager of Quince []"; "retain[s] exclusive control over the operations of Quince []"; and "is responsible for maintaining contact with Quince [] and performing on-site visits, providing continuous oversite [sic] of the operations of the facility, Quince [], and controlled the financial operations of Aurora Cares, LLC, Quince [], and D&N, LLC. (Id. ¶ 9.) He has pled that Non-facility Defendants' failure to perform these duties adequately led to Doris Albright's injuries.   (See id. ¶¶ 51(a)-(w), 58(a)-(h).) Hardaway's pleading is sufficient.   Taking his factual allegations as true, as the Court must do at this stage, see Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 570); Lorshbaugh v. Cmty. Heath Sys., Inc., 2019 WL 355529, at *2 (E.D. Tenn. Jan. 29, 2019), Hardaway has adequately pled that Non-facility Defendants fall within the THCLA's definition of "management company" and/or "managing employees."   Tenn. Code Ann. § 29-26-101(a)(4)(A)-(D). Non-facility Defendants' Motion to Dismiss on this ground is DENIED.

### C. **Hatfield**

Non-facility Defendants argue that DTD, D&N, Denz, and Bennett must be dismissed because they cannot be held directly or vicariously liable given the Tennessee Court of Appeals' decision in Hatfield, 2018 WL 3740565.  (ECF No. 17-1 at 17-21.)  Hatfield is inapposite at this stage.  Hatfield held that, in another suit against a nursing home and the Non-facility Defendants, DTD, D&N, Denz, and Bennett were not directly liable because the evidence presented to the jury was insufficient.  See 2018 WL 3740565, at *31 ("We cannot agree that the jury had material evidence to find direct liability against Mr. Denz, Mr. Bennett, DTD, or D&N in this case.").  That holding has no bearing at the motion-to-dismiss stage, where the decision turns on the pleadings.  Evidence presented in this case may be sufficient to support a finding of direct liability.  See id. at *31 ("[I]n order to be directly liable . . . each [Non-facility Defendant] must have been involved in the day-to-day operations of the facility.").  Hardaway has adequately pled facts sufficient to survive a motion to dismiss.

Hatfield also held that DTD, D&N, Denz, and Bennett were not vicariously liable because, under the alter-ego theory, on which the jury was instructed, there was insufficient evidence to support the jury's verdict.  See id. at *39-42.  That holding has no bearing at this stage because evidence presented in this case may

39

be sufficient to support a finding of vicarious liability. See id. at *36-39 (holding that shareholders and parents of subsidiaries may be held vicariously liable if the corporate veil is pierced). Hatfield also suggested that a finding of vicarious liability might have been sustained if the jury had been instructed on a different legal test. See id. at *38-41. Evidence presented in this case, and/or the instructions to the jury, might be sufficient to support a finding of vicarious liability. Hardaway has adequately pled facts sufficient to survive a motion to dismiss. Non-facility Defendants Motion to Dismiss on this ground is DENIED.

### D. Limited Liability Protection

Non-facility Defendants argue that DTD, D&N, Denz, and Bennett must be dismissed because there can be no personal liability for an owner, officer, or member of a Tennessee limited liability company and there can be no personal liability for a member or agent of a New York limited liability company. (ECF No. 17-1 at 21-24) (citing relevant statutes.) This argument fails. Limited liability company members may be held liable if the corporate veil is pierced. See Underwood v. Miller, No. M201900269COAR3CV, 2020 WL 730881, at *3 (Tenn. Ct. App. Feb. 13, 2020) (citing Edmunds, 403 S.W.3d at 829); Adams v. Adient US LLC, No. 1:18-cv-01179, 2019 WL 1569353, at *3 (W.D. Tenn. Apr. 11,

2019); <u>Grammas v. Lockwood Assocs., LLC</u>, 95 A.D.3d 1073, 1074–75, 944 N.Y.S.2d 623, 625 (2012) ("A party may seek to hold a member of an LLC individually liable despite this statutory proscription by application of the doctrine of piercing the corporate veil.") (citations omitted); <u>see also</u> <u>Layne Christensen Co. v. City of Franklin, Tennessee</u>, No. 3:17-cv-01236, 2020 WL 1469870, at *7-9 (M.D. Tenn. Mar. 26, 2020); <u>Hatfield</u>, 2018 WL 3740565, at *34-39; <u>Hill v. Fairfield Nursing & Rehab. Ctr., LLC</u>, 134 So. 3d 396, 406-07 (Ala. 2013).  Hardaway has adequately pled facts that could support a corporate veil-piercing.  Non-facility Defendants Motion to Dismiss on this ground is DENIED.

**V.   Conclusion**

For the foregoing reasons, Non-facility Defendants' Motion to Dismiss is DENIED.

So ordered this 20th day of July, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE